**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Alan Konieczny,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-19-02543-PHX-DWL<br><br>**ORDER** |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), the Commissioner's Response (Doc. 13, "Def. Br."), Plaintiff's Reply (Doc. 14, "Reply"), and the Administrative Record (Doc. 11, "R."). For the following reasons, the Court will affirm the decision.

**I.   BACKGROUND**

Plaintiff filed his application on June 19, 2014 and alleges disability as of January 25, 2013.[1] (R. at 20–21.) The Commissioner denied the application initially and upon reconsideration. (*Id.* at 20.) A hearing was held before an administrative law judge ("ALJ") who again denied the application. (*Id.* at 20–34 [ALJ decision], 44–66 [hearing

---

[1]   Plaintiff initially alleged disability as of March 27, 2012 but amended the date to January 25, 2013. (R. at 21, 292.)

transcript].) The Appeals Council upheld the decision and it became final. (*Id.* at 1–3.)

The ALJ found Plaintiff had "severe" impairments of (1) coronary artery disease with stent placements, status post left shoulder replacement; (2) history of left ankle surgery and hardware removal, status post left partial knee replacement; (3) obesity; (4) gastroesophageal reflux disease; (5) and sacroiliac joint arthritis. (*Id.* at 23.) Despite these impairments, the ALJ found that:

> [Plaintiff] has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: [he] is able to stand and walk for four hours in an eight-hour day; is able to sit for six hours in an eight-hour day; occasionally able to push and pull with the bilateral upper extremities; is occasionally able to operate bilateral foot controls; is never able to climb ladders, ropes and scaffolds or crawl; is occasionally able to climb ramps and stairs, balance, stoop, crouch, and kneel; is occasionally able to perform bilateral overhead reaching; and can tolerate occasional exposure to excessive vibration, dangerous machinery with moving, mechanical parts and unprotected heights.

(*Id.* at 26.) Based on this RFC assessment, coupled with Plaintiff's age, education, and work experience and testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform work as a storage facility rental clerk, ticket seller, and router and was therefore not disabled. (*Id.* at 33–34.)

## II.    LEGAL STANDARD

When deciding whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation,

one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, which is whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

…

…

…

## III. ANALYSIS

### A. Plaintiff's Symptom Testimony

Plaintiff's first assignment of error is that the ALJ improperly rejected his pain and symptom testimony. (Pl. Br. at 9-19.)

Absent evidence of malingering, an ALJ may only discount a claimant's testimony for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). General findings are insufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014).

"[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For example, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). See also 20 C.F.R. § 404.1529(c)(3)(i). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. *See also Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming rejection of claimant's testimony where claimant's reported activities "suggest[ed] that [his] later claims about the severity of his limitations were exaggerated"). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms" and "whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment." *Lingenfelter*, 504 F.3d at 1040. *See also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not

disabling for the purpose of determining eligibility for SSI benefits."); 20 C.F.R. § 404.1529(c)(3)(iv)–(v). And "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ summarized Plaintiff's statements and testimony regarding his symptoms and limitations. (R. at 27.) Plaintiff testified that because of issues with his shoulders and knees, he is unable to perform work requiring heavy lifting, including his past jobs. (*Id.* at 47, 49.) Plaintiff further testified that he is unable to perform work that does not require heavy lifting because of fatigue and chest pain. (*Id.* at 49–50.) Yet as noted by the ALJ (and confirmed by Plaintiff), Plaintiff's medical providers do not believe Plaintiff's chest pain is cardiac-related. (*Id.* at 28 [ALJ order: "While the claimant reported chest pain in 2014, the cardiologist concluded that this was not cardiac in nature and recommended diet and exercise modifications"]; *id.* at 48 [Plaintiff's acknowledgment during hearing testimony that "they seem to suggest it's not cardiac"]; *id.* at 1414 [March 2014 doctor's note: "Had some chest discomfort, I do not think it's cardiac. I think it is more acid reflux."]; *id.* at 1561 [November 2015 doctor's note: "[A]ngina like symptoms have been improved on the Ranexa. . . . Believe to be more MSK [musculoskeletal]"].) Regardless of its etiology, Plaintiff testified that his chest pain, as well as fatigue, would preclude him from working, even as a parking lot cashier where he would be sitting for most of the day. (*Id.* at 51–52.) He testified that his fatigue "limits the amount of what [he] can do" and requires him to rest four or five hours a day "in [his] recliner or whatever" and take a break if he is "hurting or whatever." (*Id.* at 53, 55.) He further testified that his pain is "pretty much constant." (*Id.* at 54.)

The ALJ rejected these allegations, finding that Plaintiff had "engag[ed] in a level of activity that exceed[ed] his reports of his ability," and referenced several activities in support of this conclusion. (*Id.* at 30–31.) Among other things, the ALJ noted that:

- Plaintiff was able to walk a mile—sometimes three times per week—according

to notes from his cardiologist.  (*Id.* at 30.)[2]

- ▪ Plaintiff was "reportedly 'very active' during a weeklong trip to Ohio in 2013, during which time he led dog training." (*Id.* at 30, citing *id.* at 868, 873.)
- ▪ Plaintiff went camping, traveled to Seattle and California, and visited Knott's Berry Farm, Legoland, and Sea World. (*Id.* at 30, citing *id.* at 832, 1477.)
- ▪ Plaintiff was "on his feet a lot, taking care of his child" and "put a trampoline together." (*Id.* at 30, citing *id.* at 826, 1481.)
- ▪ Plaintiff reported moving furniture. (*Id.* at 31, citing *id.* at 1472.)
- ▪ Plaintiff fractured his finger while "horsing around" with some friends on his birthday. (*Id.* at 31, citing *id.* at 1458.)[3]
- ▪ Plaintiff "indicated he went to Phoenix to go to a concert." (*Id.* at 31, citing *id.* at 1468.)

Plaintiff argues the ALJ erred in relying on these activities to discount his symptom testimony because they were "isolated events where [his] activity increased, along with increased symptoms," and none of them were actually "inconsistent with [his] testimony that he had chronic pain and was often about to have, or was recovering from, a surgery." (Pl. Br. at 15.)  This argument is unavailing.  The reasons provided by the ALJ constitute

---

[2]  Plaintiff alleges that "the ALJ did not cite to the record in support of this statement, rendering it unreviewable." (Pl. Br. at 14.)  The Court disagrees.  Earlier in the decision, the ALJ noted that Plaintiff was "walking for exercise" and cited a treatment record that stated Plaintiff was "walk[ing] a mile 3 days a week." (R. at 28, citing "Exhibit B24F, p. 33," which appears at R. 1423.)  Later in that same paragraph, the ALJ noted that Plaintiff "was still walking one mile per day, three days per week, in September" and cited pages 3 and 28 of Exhibit B22F. (*Id.*)  This citation was likely a typographical error because pages 3 and 28 of Exhibit B24F—not B22F—state that Plaintiff walks a mile 3 days a week. (*Id.* at 1393, 1418.)

[3]  Hospital records dated November 16, 2014 note that Plaintiff stated "his middle finger got caught and twisted" while "horsing around" with friends the previous night when they went out for his birthday. (R. at 1458.)  However, a December 2, 2014 record from Plaintiff's psychologist states that Plaintiff's wife fractured his middle finger during a "scuffle" between them that ensued when they got home from this outing. (*Id.* at 1466.) The Court defers to the ALJ's resolution of this conflicting evidence.

specific, clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's allegations, particularly where he alleged he was in "constant" pain and precluded by fatigue from engaging in activities. For instance, less than a month before traveling to Ohio for dog training, Plaintiff underwent foot surgery. (R. at 880–82.) Plaintiff's provider noted that this trip, which the provider was unaware of before the surgery, complicated Plaintiff's postoperative evaluation. (*Id.* at 872–73.) The provider noted that Plaintiff would "be supervising rather than doing actual training and should not be on his feet very much. Hopefully." (*Id.* at 877.) He further noted that Plaintiff's prognosis was "[g]ood, pending postoperative compliance." (*Id.* at 882.) However, after Plaintiff's return from Ohio, the provider noted that the hardware placed in Plaintiff's foot was exposed and that Plaintiff had been "[v]ery active" on the trip and "did more than he said he would with respect to the do[g] training." (*Id.* at 868.)

The ALJ also rejected Plaintiff's allegations because she found they were "greater than expected in light of the objective evidence of record." (*Id.* at 30; *see id.* at 27–30 [ALJ's summary of the medical evidence].) This reason, too, is specific, clear and convincing, and supported by substantial evidence. As for Plaintiff's coronary artery disease, the ALJ noted that it was stable and that his chest pain was not cardiac-related. (*Id.* at 28, 30 [citing *id.* at 1414, 1561].) She also noted that echocardiograms were normal or unremarkable. (*Id.* at 28 [citing *id.* at 1381, 1568].) Plaintiff was reportedly "doing well" with "no symptoms" other than heartburn related to gastrointestinal issues. (*Id.* at 1424.) Additionally, Plaintiff's cardiologist encouraged exercise and physical activity. (*Id.* at 1409, 1414, 1572.) He noted Plaintiff had normal gait and normal strength and tone in his muscles. (*Id.* at 1409, 1414, 1424, 1561.) As previously discussed, Plaintiff's cardiologist also consistently noted that he was walking a mile three days a week. (*Id.* at 1404, 1407, 1413, 1418, 1423, 1428, 1433, 1438.)[4]

As for Plaintiff's musculoskeletal issues, the ALJ found that his symptoms mostly

---

[4] In apparent attempt to discredit these notations, Plaintiff refers to them as mere "computerized progress notes." (Pl. Br. at 14.) Plaintiff's basis for this assertion is unclear.

resolved after surgery, x-rays were consistently "unremarkable," and Plaintiff received no additional intervening treatment—other than pain management—for these conditions. (*Id.* at 28–30.) Plaintiff's allegation of error with respect to these impairments is that the ALJ erroneously relied on a lack of treatment following surgery and a lack of positive findings from providers. (Pl. Br. at 12.) But the ALJ may consider an absence of treatment in determining the severity of an impairment. *See, e.g., Burch*, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (upholding ALJ's rejection of claimant's symptom testimony in part because "the ALJ noted the absence of medical treatment for claimant's back problem between 1983 and October 23, 1986, suggesting that if the claimant had actually been suffering from the debilitating pain she claimed she had, she would have sought medical treatment during that time").

### B. Lay Witness Testimony

Plaintiff's second assignment of error is that the ALJ improperly rejected lay witness testimony from his spouse. (Pl. Br. at 19–20.) An ALJ may only reject a lay witness's testimony for "reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

The ALJ declined to give "significant weight" to the statement of Plaintiff's wife, Kristi Konieczny. (R. at 32.) First, the ALJ found that because she lacked medical training "to make exacting observations as to dates, frequencies, types, and degree of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of [her] statement [was] questionable." (*Id.*) Second, the ALJ found that her statement, like Plaintiff's, was "not consistent with the preponderance of the opinions and observations by medical doctors" and "the objective medical evidence." (*Id.*)

The Court finds no error with the ALJ's second reason. Because the ALJ properly rejected Plaintiff's subjective complaints, Ms. Konieczny's statement was also properly rejected. *Valentine*, 574 F.3d at 694 (holding that where an "ALJ provided clear and convincing reasons for rejecting [a claimant's] own subjective complaints" and a third

party's testimony is "similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the third party's] testimony").

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this case.

Dated this 19th day of May, 2020.

Dominic W. Lanza
United States District Judge